**Gary Steven JONES, a minor, by and through Lola Mae Jones, his guardian ad litem, Petitioner,**

v.

**Allen F. BREED, Director of the California Youth Authority, Robert McKibben, Superintendent of the Southern Regional Center Clinic, California Youth Authority, Respondents.**

**No. 71-2907-LTL.**

United States District Court, C. D. California.

May 5, 1972.

Peter Bull, Robert L. Walker, San Francisco, Cal., Donald W. Pike, Beverly Hills, Cal., for petitioner.

---

Evelle J. Younger, Atty. Gen., Herbert L. Ashby, Chief Asst. Atty. Gen., Crim. Div., Doris H. Maier, Asst. Atty. Gen., Writs Section, S. Clark Moore, Russell Iungerich, Deputy Attys. Gen., Los Angeles, Cal., for respondents.

## MEMORANDUM AND ORDER

LYDICK, District Judge.

This matter is before the Court on a Petition for Writ of Habeas Corpus filed on behalf of minor Gary Steven Jones, a prisoner of the State of California committed to the California Youth Authority after his conviction under California law of robbery in the first degree.

The Court has considered the arguments and has reviewed the Petition, the response, the reply and the authorities cited by both parties as well as the complete record of all state court proceedings.

The sole issue before this Court is whether Jones has been placed twice in jeopardy in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution by reason of his subjection to those procedures of the Welfare and Institutions Code of the State of California, known otherwise as the Juvenile Court Law, establishing a special treatment for suspected juvenile offenders.[1]

The question here presented has been previously considered at each stage of the proceedings before the involved state courts and duly submitted to the Court of Appeal, Second District, and Supreme Court of the State of California, on habeas corpus.[2]

Briefly stated, the facts are that on February 9, 1971 a petition was filed with the juvenile court in Los Angeles, alleging that Jones was a person described by Section 602 of the Welfare and Institutions Code in that he had committed an act which, if committed by an adult, would constitute a violation of Section 211 of the Penal Code of the State of California (robbery). After a detention hearing, the minor was detained pending a hearing on the petition. A second hearing, pursuant to Section 701 of the Welfare and Institutions Code, was held on March 1, 1971 and resulted in a finding that the allegations of the petition were true and that the minor was a person described by Section 602. The proceedings were continued for dispositional hearing pursuant to Section 702. At that hearing, the Court announced its intention to find, pursuant to Section 707, that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court and that the court intended under that section to dismiss the petition and direct that the minor be prosecuted as an adult in the Superior Court. After an adjournment, sought by the minor's counsel, such an order was made. Jones was thereafter prosecuted as an adult in the Superior Court and convicted as above noted.

It is the second hearing before the juvenile court under Section 701 on which this Court has been asked by petitioner to focus its attention and to find that such hearing was tantamount to a criminal trial wherein jeopardy attached at its commencement thus foreclosing any later criminal prosecution.

Such finding cannot be made. That hearing was but one step in a comprehensive program developed by the State of California for the handling of delinquent youth. That program, representing the combined efforts of the California legislature and judiciary, is a thoughtful and in this Court's view entirely constitutional effort to strike a realistic balance between the public's right to order and its interest in the proper care and handling of juveniles.

1. California Welfare and Institutions Code, Sections 602, 701, 702 and 707.

2. In Re J., 17 Cal.App.3d 704, 95 Cal. Rptr. 185 (1971); Cert. denied by California Supreme Court August 4, 1971.

The preliminary procedures of the California Juvenile Courts Law, civil rather than criminal in nature, provide to a minor accused of a crime a means to escape some of the consequences which would result to an adult offender if in the opinion of the juvenile court the minor is one who would benefit from its application. As applied by California courts, those procedures contain all the essential elements of due process and fundamental fairness required by the Federal Constitution as interpreted by the U. S. Supreme Court in, among others, Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), Kent v. U. S., 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

The distinctions between the preliminary procedures and hearings provided by California law for juveniles and a criminal trial are many and apparent and the effort of petitioner to relate them is unconvincing. However, even assuming jeopardy attached during the preliminary juvenile proceedings, and further assuming all rights constitutionally assured to an adult accused of crime are to be enforced and made available to a juvenile [3] it is clear that no new jeopardy arose by the juvenile proceeding sending the case to the criminal court. Such transfer neither acquitted nor convicted and could not in any event represent a second trial for the same offense or more than a continuing jeopardy for a single offense.

While there is no doubt that certain formal and technical rules as to when jeopardy attaches or terminates may have their place and serve a valid function in adult criminal proceedings, to apply these same rigid and inflexible standards to a juvenile court could deprive it of its ability to function. In this regard, this Court is in full concurrence with the findings of the U.S. Su-

preme Court in its most recent examination of the juvenile courts:

"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." McKeiver v. Pennsylvania, 403 U.S. 528, at 551, 91 S.Ct. 1976, at 1989 (1971).

The Petition for Writ of Habeas Corpus is denied.

---

3. But see McKeiver v. Pennsylvania, *supra*, at page 533, 91 S.Ct. 1976.